SANDRA CABRINA JENKINS, Judge.
1 \ Defendant appeals the trial court’s judgment granting a preliminary injunction in favor of Plaintiff. First, we find no legal error in the trial court’s granting the Plaintiffs’ preliminary injunction. Second, we find that the trial court did not abuse its discretion in finding the Plaintiffs made a prima facie showing of irreparable harm. Therefore, the judgment of the trial court is affirmed and the matter is remanded to the trial court for further proceedings.
FACTS AND PRCEDURAL HISTORY
Plaintiffs, N.M. Easterling and Food Art, Inc., are the current occupants of 801 Carondelet Street, New Orleans, LA (“the Property”).[1] As the owner and operator of Food Art, Inc., Ms. Easterling signed each lease bn behalf of Food Art, Inc. and as guarantor. Defendants, the Estate of Marion Gardiner Miller and Marion Sullivan Schreiner, are the current co-owners and lessors of the Property. Over twenty-three years Plaintiffs have entered into a *224 series of leases and extensions[2] for the Property either with Defendants or Defendants’ predecessor in |2ownership. Initially, the Property was owned by Marion Sullivan Gardiner, who passed away on November 12, 1979. Upon her passing, Ms. Gardiner’s will bequeathed a one-half ownership interest in the property to her daughter, Marion Gardiner Miller, and the other one-half ownership interest to her granddaughter, Marion Sullivan Schreiner, subject to two trusts lasting twenty-five years from Ms. Gardiner’s death. Ms. Miller’s interest is held in her estate while Ms. Schreiner’s interest belongs to her free from the trust.
On August 21, 1991, Plaintiffs entered into a commercial lease of the Property with the Marion Sullivan Gardiner Trust (“MSGT”) for the purpose of operating the catering business Food Art, Inc. (the “1991 Lease”). The 1991 Lease had an initial term of five years, beginning on September 1,1991 and ending on August 31,1996. On the same day, Plaintiffs executed an addendum to the 1991 Lease (the “1991 Addendum”) granting Plaintiffs two options to extend the term of the 1991 Lease, the first by two years and the second by three years.[3]
On December 7, 1998, Plaintiffs executed a second lease for the Property (the “1998 Lease”). The 1998 Lease had an initial term of two years beginning on January 1, 1999 and ending on December 31, 2001. There was no addendum to the 1998 Lease, and it did not reference the 1991 Lease. After the 1998 Lease ended on December 31, 2001, Plaintiffs executed two extensions that, together, granted Plaintiffs options to extend the lease through December 31, 2026. (The latter of the |stwo was executed in 2010 and will be referred to as the “2010 Renewal and Extension.”)
After the commencement of the 1991 Lease, Plaintiffs complained about water intrusion resulting from problems with the Property’s roof. In a letter dated July 23, 1992, Ms. Easterling demanded that Defendants’ predecessor in ownership, the MSGT, repair the roof of the Property which was leaking and had done so for a period before the letter was sent. Despite apparent attempts to fix this problem, the roof problems remained and the water intrusion persisted.[4] Since at least 1993, the Property has also suffered problems with vegetation growing from its exterior walls.[5] Plaintiffs regularly removed the vegetation and sprayed weed-killer on the exterior walls to prevent further growth, but these efforts were to no avail as the vegetation continued to return. The roof and vegetation problems resulted in continuing disputes between Plaintiffs and Defendants regarding the causes of the problems and who bore the responsibility of correcting them. On July 23, 2014, the disputes culminated in Defendants terminating the *225 lease and demanding that Plaintiffs vacate the Property by July 27, 2014, and Plaintiffs did not vacate the property. Defendants then posted a Notice to Vacate- on July 28, 2014, and Plaintiffs again failed to vacate the Property.
On August 1, 2014, Plaintiffs instituted the instant litigation by filing a Petition for Breach of Lease Contract and Injunctive Relief, Accounting and Damages. In their petition, Plaintiffs asserted: 1) that Defendants breached the |41991 Lease by not repairing the roof and not remortaring the exterior walls because both actions were expressly undertaken by Defendants’ predecessors in the 1991 Lease, 2) the 1998 Lease was not a new lease but an extension of the 1991 Lease, and 3) even if the 1998 Lease was a new lease, the roof repairs and remortaring of the exterior walls are Defendants’ responsibility undér the 1998 Lease as structural repairs. Plaintiffs sought a temporary restraining order and preliminary injunction preventing Defendants from instituting or following through with eviction from the Property; from interfering with Plaintiffs’ possession; from rejecting or failing to accept rental payments and extensions of the lease; and from destroying or failing to preserve evidence.[6]
Defendants filed Exceptions, Answer, and a Reconventional Demand on August 5, 2014. In their reconventional demand, Defendants asserted that the 1998 Lease constituted a novation of the 1991 Lease, the roof repairs and remortaring of the exterior walls were Plaintiffs’ responsibility as they were not structural repairs, and, alternatively, the repairs were the Plaintiffs’ responsibility even if they were structural in nature because they would have been unnecessary had Plaintiffs made ordinary repairs. Thus, Defendants sought to evict Plaintiffs from the Property due to their failure to make roof repairs and re-mortar the exterior walls. Defendants also sought a temporary restraining order and preliminary injunction commanding Plaintiffs and their agents to cease conducting business at the Property.
The trial court denied the parties’ respective requests for temporary restraining orders on August 6, 2014, citing the parties’ agreement to maintain the status quo until a hearing on their preliminary injunction requests, and ordered a 1 ¡¡preliminary injunction hearing for August 18, 2014 to be conducted upon verified pleadings' and affidavits. The hearing on Preliminary Injunction occurred on August 27, 2014;[7] the trial court rendered judgment on October 8, 2014 granting Plaintiffs’ request for preliminary injunction and denying Defendants’ request for preliminary injunction. In written reasons for judgment, the trial court found that Plaintiffs had. made a prima facie case that there are no grounds for eviction, as Plaintiffs performed ordinary repairs and maintenance and timely paid rent, and that Plaintiffs demonstrated irreparable harm, specifically that Plaintiffs’ business reputation would be irreparably harmed. The trial court enjoined Defendants as follows:
... from evicting plaintiff and defendant-in-reconvention, N.M. Easterling and Food Art, Inc. from the property at 801 Carondelet, from threatening, posting notices to, or pushing plaintiffs and defendants-in-reconvention’s peaceable possession; from blocking or otherwise limiting plaintiffs and defendants-in-re- *226 convention’s access .to and use of property during the terras of the lease and extensions exercised thereof; and from rejecting or failing to accept rental payments and extensions of the lease of the property as provided for in the lease by plaintiffs and defendants-in-reconvention until a subsequent order or Judgment on these issues.
It is from this judgment that Defendants now appeal.[8]
LAW AND ANALYSIS
On appeal, Defendants present two assignments of error for this Court to.review. First, Defendants ask us to determine whether the trial court’s judgment is predicated on legal error, thereby mandating a de novo review. Second, Defendants ask us to determine whether Plaintiffs are entitled to a preliminary injunction based Ron the evidence presented, specifically as to whether Plaintiffs proved irreparable harm.[9]
Because the determination of the first assignment of error will determine our standard of review, we analyze it first. Trial courts have great discretion in deciding whether to grant or deny a preliminary injunction, and we-will not disturb their ruling absent a clear abuse of discretion. Smith v. Brumfield, 13-1171, p. 7 (La.App. 4 Cir. 1/15/14), 133 So.3d 70, 75 (citing Yokum v. Pat O’Brien’s Bar, Inc., 12-0217, p. 6-7 (La.App. 4 Cir. 8/15/12), 99 So.3d 74, 80). Of course, this standard is based on the conclusion that the trial court committed no error of law and was not manifestly erroneous in making a factual finding that was necessary to the proper exercise of its discretion. Id. at 75. Where one or more legal errors interdict the trial court’s fact-finding process, the abuse of discretion standard becomes inapplicable, and we conduct our own-de novo review of the record. South East Auto Dealers Rental Ass’n, Inc. v. EZ Rent to Own, Inc., 07-0599, p. 5 (La.App. 4 Cir. 2/27/08), 980 So.2d 89, 93.
Defendants assert that the trial court committed legal error in granting Plaintiffs’ preliminary injunction because the preliminary injunction is contrary to law as it prevents the filing of, their eviction suit. Indeed, an injunction cannot prevent the filing of a suit. Levee Const. Co. v. Equitable Cas. & Sur. Co. of New York 173 La. 648, 138 So. 431, 432 (1931) (“Nothing is better settled than that an injunction will not lie. to prevent the bringing of a suit..,”); Bd. of Sup’rs of Louisiana State University v. Dixie Brewing Co., 14-0641, pp. 15-16 (La.App. 4 Cir. 11/19/14), 154 So.3d 683, 693-94; Hooper v. Hero Lands Co., 13-0576, p. 11 (La.App. 4 Cir. 12/11/13), 128 So.3d 691, 698 (“... a party who has a right to bring suit ... cannot be, enjoined from bringing such a suit....”); Lenfants Caterers, Inc. v. Firemen’s Charitable and Benevolent Assoc. of New Orleans, 386 So.2d 1053 (La.App. 4 Cir.1980) (holding that a preliminary injunction cannot be used to prevent the filing of a lawful eviction suit). However, the purpose of a preliminary injunction is to preserve the status quo between the parties pending a trial on the merits. *227 Dynamic Constructors, L.L.C. v. Plaquemines Parish Government, 15-0271, p. 2, n. 1 (La.App. 4 Cir. 8/26/15), 173 So.3d 1239, 1241; Smith v. Brumfield, 13-1171, p. 5 (La.App. 4 Cir. 1/15/14), 133 So.3d 70, 74; Mid-South Plumbing, LLC v. Development Consortium-Shelly Arms, LLC, 12-1731, p. 9 (La.App.4 Cir. 10/23/13), 126 So.3d 732, 739. A review of the record demonstrates that the preliminary injunction does not prevent Defendants from filing their eviction suit.. Rather, the preliminary injunction was crafted to preserve the status quo between Plaintiffs and Defendants until trial on the merits of Defendants’ reconventional eviction suit.
At the preliminary injunction hearing on August 27, 2014, Defendants’ counsel argued, as they do on appeal, that Plaintiffs’ request in their petition for preliminary injunction was an attempt to prevent Defendants from filing a lawful eviction suit. In them petition, Plaintiffs sought to prevent Defendants from “instituting or following through with, eviction” from the Property, and Defendants specifically referenced this language in their argument at the hearing. However, this language was not included in the trial court’s judgment. Instead, the trial court enjoined Defendants as follows:
|s. •. from evicting plaintiff and defendant-in-reconvention, N.M. Easterling and Food Art, Inc. from the -property at 801 Carondelet, from threatening, posting notices to, or pushing plaintiffs and defendants-in-reconvention’s peaceable ■ possession; from- blocking or' otherwise limiting plaintiffs and defendants-in-re-convention’s access to and use of property during the -terms of the lease and ■extensions exercised thereof; and from rejecting or failing to accept rental payments and extensions of the lease of the property as provided for in the lease by plaintiffs and defendants-in-reeonvention until a subsequent order or Judgment on these issues, (emphasis added).
The difference in language between Plaintiffs’ request and the trial court’s judgment is significant. While the Plaintiffs’ petition requests that Defendants be enjoined from “instituting or following through with” the eviction, the judgment itself excludes this language. In the absence of any language prohibiting Defendants from “instituting or following through' with” eviction, there is no language in the preliminary injunction preventing Defendants from filing their eviction claim. This conclusion is supported by the fact that Defendants had already filed their eviction suit at the time the preliminary injunction was issued. Further, the language “until a subsequent order of Judgment on these issues” indicates the eviction of. Plaintiffs is conditioned on subsequent order or judgment.
The language conditioning eviction on a subsequent order or .judgment anticipates the procedure for eviction provided in the Louisiana Code of Civil Procedure. It is well-settled that a lessor must resort to eviction proceedings before the lessor may take possession from the lessee. Pelleteri v. Caspian Group Inc., 02-2141, pp. 8-9 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230, 1236 (citing Weber v. McMillan, 285 So.2d 349, 351 (La.App. 4 Cir.1973)); Platinum City, L.L.C. v. Boudreaux, 11-559, pp. 5-6 (La.App. 3 Cir. 11/23/11), 81 So.3d 780, 784-85. The first step in an eviction proceeding is for the lessor to give the lessee a-notice to vacate. See La. C.C.P. art. 4701. Next, if the lessee fails to vacate the premises or if the lessee waived his right to notice to vacate by written waiver contained in the |fllease, then the lessor must resort to summary judicial process whereby the lessee must show cause why possession of the premises should not be delivered to the lessor. See La. C.C.P. art. *228 4731. Finally, after a trial where the -lessor must prove the legal ground for eviction, the last step in the eviction proceeding is for the lessor to obtain a judgment of eviction which enables the lessor to terminate the lessee’s possession. See La. C.C.P. arts. 4732, 4733; Housing Authority of New Orleans v. Haynes, 14-1349, p. 15 (La.App. 4 Cir. 5/13/15), 172 So.3d 91, 99 (citing Housing Authority of New Orleans v. King, 12-1372, p. 4 (La.App. 4 Cir. 6/12/13), 119 So.3d 839, 842). Thus, until the judgment of eviction, possession of the premises remains with the lessee. See La. C.C. art. 2682. Here, Defendants gave Plaintiffs two notices to vacate on July 23 and 28, 2014, and Plaintiffs refused to vacate the Property.[10] Defendants then filed the rule to show cause required by Article 4731 as a reconventional demand. There has been no trial on the rule and no judgment of eviction. As such, Defendants may not yet legally terminate Plaintiffs’ possession. The status quo is for Plaintiffs to remain in possession of the Property until the court issues a judgment of eviction.
Moreover, the transcript of the preliminary injunction hearing illustrates that the trial court’s concern was preservation of the status quo. In response to the argument that the preliminary injunction would prevent Defendants from filing their eviction suit, the trial court expressed its understanding that the injunctive relief only related to whether the trial court would maintain the sfatus quo. Additionally, the trial court expressed concerns that Defendants’ request for | ^preliminary injunction amounted to a “constructive eviction” wherein Plaintiffs would be allowed to keep their equipment on the Property but not to conduct their business. Indeed, if the trial court granted Defendants’ preliminary injunction, then Defendants would have obtained the relief sought in their reconventional demand for eviction, namely the delivery of possession of the Property, before a determination that there are grounds for eviction pursuant to the procedures thereof. From the transcript of the hearing and the fact that Defendants argued the preliminary injunction would prevent them from filing their eviction suit, our interpretation of the preliminary injunction as anticipating the procedures for eviction is substantiated.
From our review of the record and language of the judgment at issue, we find this preliminary injunction does not prevent Defendants from filing a lawful eviction suit. Defendants have already instituted eviction proceedings in their reconventional demand, and this injunction does not prevent them from prosecuting their claims. Rather, this preliminary injunction seeks to maintain the status quo existing between Plaintiffs and Defendants until proceedings are had which may or may not result in a judgment of eviction. Thus, we find the trial court judgment granting preliminary injunction is not legal error. We continue our review under the abuse of discretion standard.
To obtain a preliminary injunction, the petitioner must establish by pri-ma fade evidence that: (1) it will suffer irreparable injury, loss, or damage if the motion for preliminary injunction is not granted and (2) it is entitled to the relief sought through at least a showing that it will likely prevail on the merits of the case. Smith v. Brumfield, 13-1171, p. 6 (La.App. *229 4 Cir. 1/15/14), 133 So.3d 70, 74-75 (citing General Motor Acceptance Corp. v. Daniels, 377 So.2d 346, 348 (La.1979) and Historic Restoration, Inc. v. RSUI Indem. Co., 06-1178, p. 11 (La.App. 4 Cir. 3/21/07), 955 So.2d 200, 208). Issuance of a preliminary injunction is a harsh, drastic and extraordinary remedy and should only be issued if the applicant is threatened with irreparable loss without adequate remedy at law. MST Enterprises Co., L.L.C. v. City of New Orleans, 2015-0112, p. 4 (La.App. 4 Cir. 7/29/15), 174 So.3d 195; Kruger v. Garden Dist. Ass’n, 2000-1135, p. 7 (La.App. 4 Cir. 1/17/01), 779 So.2d 986, 991.
Irreparable injury is an injury or loss that cannot be adequately compensated in money damages, or is not susceptible to measurement by pecuniary standards. Brumfield, 13-1171, p. 7, 133 So.3d at 75. Mere inconvenience is insufficient to demonstrate the requisite irreparable injury. Id. However, even where injuries are quantifiable, injunctive relief may still be proper where a money judgment is expected to be valueless due to the insolvency of the judgment debtor or for other reasons. Mid-South Plumbing, LLC v. Development Consortium-Shelly Arms, LLC, 12-1731, p. 12 (La.App. 4 Cir. 10/23/13), 126 So.3d 732, 740; Oestreicher v. Hackett, 94-2573, p. 4 (La.App. 4 Cir. 5/16/95), 660 So.2d 29, 31-32 (citing Ciambotti v. Decatur-St. Louis, Lupin, Property Ventures, 533 So.2d 1352, 1359 (La.App. 3 Cir.1988)).
In their second assignment of error, Defendants contend that Plaintiffs are not entitled to the preliminary injunction because they cannot demonstrate they will suffer irreparable harm. A court may hear an application for preliminary injunction upon the verified pleadings or supported affidavits. La. C.C.P. art. 3609. The party seeking the preliminary injunction need only make a prima facie showing of irreparable harm. Brumfield, 13-1171, p. 17, 133 So.3d at 80. Here, the court provided that “proof may be adduced by verified pleadings, affidavits, or as |12in ordinary cases” in its order on August 6, 2014 setting the preliminary injunction hearing. On appeal and at the preliminary injunction hearing, Plaintiffs argued they would suffer irreparable injury due to non-fulfillment of their numerous contractual commitments, the effect of the contractual breaches on their reputation and on third parties, the cost of relocating their business to a location with adequate facilities particular to their business would be in excess of $700,000, and the inability, of Defendants to compensate for their losses. Plaintiffs characterized these damages, cumulatively, as resulting in the destruction of their business. In support of the above claims, Plaintiffs submitted Nanci Eastér-ling’s affidavit. In rebuttal, Defendants argued that by referencing breach of contracts and assigning a $700,000 cost to establish a new catering kitchen elsewhere Plaintiffs admitted their harm is measurable in monetary damages and, thus, cannot constitute irreparable injury.
In its reasons for judgment, the trial court found that through' the verified pleadings and supporting affidavits, Plaintiffs demonstrated they would suffer irreparable injury if they were evicted. Specifically, the trial court found that Plaintiffs would be unable to fulfill their contractual obligations which would irreparably harm their business reputation. ■ This Court has found irreparable injury'where there is a multiplicity of possible losses, including the breach of multiple contracts and loss of business reputation, such that the harm is egregious. Historic Restoration, Inc. v. RSUI Indem., Co., 06-1178, p. 13 (La.App. 4 Cir. 3/21/07), 955 So.2d 200, 209. In Historic Restoration, Inc., Historic Resto *230 ration, Incorporated (“Historic- Restoration”) obtained a preliminary injunction restraining its insurer from changing the terms of its existing insurance contract. Id. at 204. Though the trial court found in its reasons for judgment that Historic Restoration |1swas not required to show irreparable harm because its insurer violated a prohibitory law, it also found that Historic Restoration could demonstrate irreparable injury, even if required, where the absence of the preliminary injunction would cause Historic Restoration to breach sevérál contracts which threatened the loss of its goodwill, reputation, and competitive edge in the marketplace. Id. at 208-209. This Court agreed that'irreparable injury was demonstrated, finding the harm to Historic Restoration to be egregious and not measurable by pecuniary standards once the contracts were violated and Historic Restoration’s reputation was lost based on the facts and circumstances of the case. ’ Id. at 209.
While there is no prohibitory law at issue here, we find the harm faced by Plaintiffs analogous to' the egregious harm faced by Historic' Restoration. As in Historic Restoration, Inc,, the harm to Plaintiffs cannot be., measured by pecuniary standards once their .contracts are violated and their reputation is lost based on the facts and circumstances of this case. Absent the preliminary injunction, Plaintiffs would be unable to fulfill their contractual agreements with clients- because. they would lose .the necessary facilities to operate their business which would damage their business reputation to the extent of destroying, their business. Considering the foregoing, we cannot say the trial court abused its discretion in finding Plaintiffs made a prima facie showing of irreparable harm áñd granting Plaintiffs? preliminary injunction.
CONCLUSION
For the reasons discussed, we find no legal error in the trial court’s judgment granting Plaintiffs request for preliminary injunction. The trial court did not abuse its discretion in finding that Plaintiffs' demonstrated irreparable harm. ’ As such, the | ^judgment is affirmed. The matter is remanded to the trial court for further proceedings.
AFFIRMED AND REMANDED.

. Ms. Easterling signed each lease and extensions on behalf of Food Art, Inc. and as guarantor,

. Although these extensions are sometimes referred to as "renewals” in the Defendants’ brief and the documents themselves, this opinion uses “extension” for clarity and to avoid the connotation that the extended léase is a new lease instead of a continuation of the old lease. See La. C.C, art. 2725, cmt (a).

. Neither party submitted proof that any of the extensions referenced herein were exercised. However, neither party disputes that Plaintiffs exercised their options to renew.

. In a letter dated February 2, 1994, Nanci Easterling referenced an unsuccessful roof repair 2.5 years before the letter. Further, in a letter dated September 4, 1997, the attorney for the MSGT references roof repairs made by the MSGT and Plaintiffs.

, By a letter dated December 29, 1993, Ms. Marion Schreiner expresses concern about vegetation growth at the Property and advises Ms. Easterling to have someone spray weed killer to take care of the vegetation.

. The portion of Plaintiffs’ request concerning preservation of evidence was denied by the trial court. Thus, it does not form part of the judgment on appeal.

. It is unclear from the record which parly or if the court continued the preliminary injunction hearing. The transcript of the hearing is, however, dated August 27, 2014.

. Importantly, Defendants do not allege the trial court erred in denying their request for preliminary injunction, only that the- trial court erred in granting Plaintiffs’ request for preliminary injunction. Thus, we do not address the trial court's denial of Defendants’ request.for preliminary injunction.

. W.e note that Defendants assign as error and argue in their brief only that Plaintiffs failed to establish irreparable injuiy. Defendants do not argue that Plaintiffs did not demonstrate they were entitled to relief through a showing they would prevail on the merits. Therefore, we only address whether Plaintiffs demonstrated irreparable harm.

. Defendants argue that the notices to vacate were unnecessary, as Plaintiffs waived their right to notice to vacate under boh leases. This is unimportant because Defendants were required to continue with the procedures for eviction regardless of whether the notice to vacate was required or whether Plaintiffs waived their right to such notice.